UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Bonnie Wittenburg,

    Plaintiff,

v.

                                         Civ. No. 04-922 (JNE/SRN)
                                         MEMORANDUM

American Express Financial Advisors, Inc.,

    Defendant.

---

Beth Bertelson, Esq., Bertelson Law Offices, P.A., appeared for Plaintiff Bonnie Wittenburg.

Julie Fleming-Wolfe, Esq., Fleming-Wolfe Law Office, appeared for Defendant American Express Financial Advisors, Inc.

---

Bonnie Wittenburg brought this action against her former employer, American Express Financial Advisors, Inc. (AEFA), asserting claims of age discrimination under the Age Discrimination in Employment Act (ADEA), 29 U.S.C. §§ 621-634 (2000), gender discrimination under Title VII of the Civil Rights Act (Title VII), 42 U.S.C. §§ 2000e to 2000e-17 (2000), and gender and age discrimination under the Minnesota Human Rights Act (MHRA), Minn. Stat. §§ 363A.01-.41 (2004). The case is before the Court on AEFA's motion for summary judgment.[1] For the reasons set forth below, the Court grants AEFA's motion.

I.    **BACKGROUND**

AEFA provides financial planning advice, asset management, insurance, and annuities, primarily through a network of financial advisors. AEFA also manages mutual funds. In

---

[1] At the motion hearing, AEFA moved to strike certain exhibits prepared and submitted by Wittenburg. The Court declines to strike the exhibits at this time, but disregards those portions of the exhibits that are not properly supported.

1

November 1998, AEFA hired Wittenburg at the age of forty-six. She was hired as an Equity Research Analyst in AEFA's Equity Investment Department (EID) and was assigned to cover stocks in the Technology Sector.[2]

In February 2002, Ted Truscott, AEFA's Chief Investment Officer, began to work on a redesign of the EID. The redesign involved the addition of three portfolio managers hired from a competitor, the creation of a new satellite office, and the merger or movement of certain funds to AEFA's satellite offices. The redesign also included the elimination of analyst positions in Minneapolis. AEFA used a "multiple incumbent process" to determine which analysts to terminate. As part of that process, AEFA ranked each analyst on a talent assessment chart. The rankings were based on several criteria including 1999-2001 performance ratings. The chart was used for a June 2002 reduction-in-force (RIF), in which Wittenburg was retained. In the June 2002 RIF, AEFA considered twenty-four analysts in the EID, fifteen were at least forty-years old and three were women. The RIF resulted in the termination of three analysts; all were men and two were more than forty.

During the summer of 2003, Truscott decided to restructure the Minneapolis office. The restructure allowed portfolio managers to supervise, hire, and recruit analysts to support the funds the portfolio managers oversaw and involved eliminating analysts by sector. AEFA's goal was to maintain sector coverage needed to support the remaining portfolio managers in Minneapolis. In November 2003, the EID was reorganized again, and AEFA decided to retain only one of the four Technology Sector analysts. AEFA again used the multiple incumbent process to determine who among the four analysts would be terminated. AEFA used 2002

---

[2] Analysts were assigned to five sectors: Financial, Consumer, Industrial, Health Care, and Technology.

performance ratings for the 2003 RIF. Of the four Technology Sector analysts considered for termination, only Dean Ramos (age 40) was retained; Wittenburg (age 51) and two male analysts (ages 41 and 36) were terminated.

On or about January 26, 2004, Wittenburg filed a charge with the Equal Employment Opportunity Commission and received her Notice of Right to Sue on January 30, 2004. She filed suit in this Court on February 13, 2004, alleging that AEFA discriminated and retaliated against her on the basis of her age and gender. AEFA now moves for summary judgment.

## II.    DISCUSSION

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The moving party "bears the initial responsibility of informing the district court of the basis for its motion," and must identify "those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If the moving party satisfies its burden, Rule 56(e) requires the nonmoving party to respond by submitting evidentiary materials that designate "specific facts showing that there is a genuine issue for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). In determining whether summary judgment is appropriate, a court must look at the record and any inferences to be drawn from it in the light most favorable to the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

3

A. **Age and gender discrimination claims**

   *1.   Wittenburg's prima facie case*

The parties agree that the *McDonnell Douglas* analysis applies to Wittenburg's ADEA, Title VII, and MHRA claims. *See McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 801-04 (1973) (Title VII); *Chambers v. Metro. Prop. and Cas. Ins. Co.*, 351 F.3d 848, 855 (8th Cir. 2003) (ADEA and MHRA). Under *McDonnell Douglas*, Wittenburg must establish a prima facie case of discrimination, at which point AEFA must come forward with a legitimate nondiscriminatory reason for its conduct. *See Chambers*, 351 F.3d at 855. In response, Wittenburg must then demonstrate that the nondiscriminatory reason offered by AEFA was a pretext for discrimination. *Id.*

Wittenburg alleges that AEFA discriminated against her on the basis of age and gender when it terminated her in 2003. This case is properly analyzed as a reduction-in-force (RIF) case. *See Fast v. S. Union Co.*, 149 F.3d 885, 890 (8th Cir. 1998) (noting sufficient personnel changes in department warrants analysis under RIF standard). To establish a prima facie case of age discrimination resulting from a RIF, Wittenburg must show that: (1) she is at least 40 years old; (2) she was qualified for the job; (3) she was discharged; and (4) age was a factor in AEFA's decision to terminate her. *Chambers*, 351 F.3d at 890. To establish a prima facie case of gender discrimination, Wittenburg must demonstrate that: (1) she is a member of a protected class; (2) she was qualified; (3) she was subjected to an adverse employment decision; and (4) some evidence of record supports the inference of gender discrimination. *See McDonnell Douglas*, 411 U.S. 802-04; *Kindred v. Northome/Indus. Sch. Dist. No. 363*, 154 F.3d 801, 803 (8th Cir. 1998); *Sigurdson v. Isanti County*, 386 N.W.2d 715, 720 (Minn. 1986). Because this case involves a RIF, Wittenburg must make some additional showing that gender was a factor in her

4

termination. *See Hesse v. Avis Rent A Car Sys., Inc.*, 394 F.3d 624, 631 (8th Cir. 2005). The Court assumes without deciding that Wittenburg has established a prima facie case of age and gender discrimination.

2.   *Legitimate nondiscriminatory reason and pretext*

AEFA presents legitimate nondiscriminatory reasons for selecting Wittenburg for termination. Namely, AEFA has proffered business and financial reasons for the 2003 RIF. Wittenburg, specifically, was terminated on the basis of a low 2002 performance rating. Therefore, the presumption of discrimination disappears and Wittenburg can avoid summary judgment only if the evidence considered in its entirety creates (1) a fact issue as to whether AEFA's proffered reasons are pretextual *and* (2) a reasonable inference that age or gender was a determinative factor in AEFA's decision to terminate Wittenburg. *See Kohrt v. MidAmerican Energy Co.*, 364 F.3d 894, 897 (8th Cir. 2004); *Mayer v. Nextel W. Corp.*, 318 F.3d 803, 807-08 (8th Cir. 2003) (holding that the evidence did not create a reasonable inference of discrimination, despite the fact that plaintiff established a prima facie case and, perhaps, even demonstrated pretext). In short, Wittenburg must demonstrate that AEFA's proffered reasons are a pretext for illegal discrimination. *Kohrt*, 364 F.3d at 898.

Wittenburg asserts that AEFA treated younger male analysts more favorably than older and female employees. First, Wittenburg relies on the fact that AEFA hired Blair Brumley, a 39-year old male analyst, after two older male analysts were terminated in the 2002 RIF. This fact, however, does not demonstrate pretext or lead to a reasonable inference of discrimination. Wittenburg has proffered no evidence that AEFA's decision to hire Brumley was motivated by a discriminatory motive or that it was connected to Wittenburg's termination in 2003.

5

Second, Wittenburg claims that one can infer an improper motive because Dean Ramos (age 40) was retained during the 2003 RIF even though his 2003 performance ratings and tenure average were weaker than Wittenburg's. This evidence does not support an inference of discrimination because AEFA did not use analysts' 2003 ratings or tenure averages to determine terminations in 2003. Instead, there is no dispute that AEFA used analysts' 2002 ratings to determine who would be terminated in the 2003 RIF. Further, there is no dispute that Ramos's 2002 ratings were better than Wittenburg's.

Third, Wittenburg argues that discrimination can be inferred because AEFA assigned two male analysts from another sector (ages 45 and 49) to work on technology stocks after Wittenburg was terminated and because AEFA posted job listings for "multi-sector" coverage after the 2003 RIF. The absorption of work by other analysts, however, does not create an inference of age or gender discrimination simply because the analysts were male and younger than Wittenburg. *See Frieze v. Boatmen's Bank of Belton*, 950 F.2d 538, 540-41 (8th Cir. 1991). In the context of a RIF, employers often distribute work to other employees performing related work for legitimate reasons. *Id.* at 541. Moreover, the age differential between these two employees (ages 49 and 45) and Wittenburg (age 51) is insufficient to create a reasonable inference of age discrimination. *See Schiltz v. Burlington N. R.R.*, 115 F.3d 1407, 1412-13 (8th Cir. 1997) (finding a five-year age disparity between plaintiff and individual hired after plaintiff's termination insufficient to raise an inference of discrimination at the prima facie stage). As to the "multi-sector" job posting, Wittenburg has made no showing that the job was the same as hers and therefore its posting does not support an inference of discrimination.

Fourth, Wittenburg argues that the talent assessment chart created in 2002 favored younger male analysts and set up older and female analysts for termination in the 2003 RIF.

6

Specifically, Wittenburg contends that in 2002, AEFA decision-makers, including Mahowald, developed a talent assessment chart for analysts and that AEFA and Mahowald knew in 2002 that the assessment would be used to determine terminations for the 2003 RIF. Wittenburg further asserts that Mahowald made negative comments about her performance that were inconsistent with her previous performance ratings and that she should have received a higher assessment. Wittenburg also asserts that older and female analysts that were placed low on the chart later received low 2002 performance ratings from Mahowald, which set them up for termination in 2003. After reviewing the record, the Court concludes that Wittenburg's allegations with respect to AEFA's motivation behind its talent assessment are unsubstantiated and speculative. The record is devoid of any support for Wittenburg's assertion that gender and age were motivating factors in AEFA's talent assessment chart. In addition, the record reveals that the talent assessment chart was used only for the 2002 RIF. There is no evidence connecting the chart to Wittenburg's termination in 2003. Therefore, evidence related to AEFA's use of the talent assessment chart does not permit a reasonable inference of discrimination. Nor does it support a finding of pretext.

Finally, Wittenburg argues that performance reviews were biased in favor of younger male analysts because they received undeserved 2002 performance ratings while she was not properly credited for her accomplishments. Although the record does show that Wittenburg believes she should have received higher 2002 scores and that some younger male analysts' evaluations were unwarranted, Wittenburg fails to put forth evidence that Mahowald or anyone at AEFA manipulated her ratings to set her up for termination because of gender or age. Instead, Wittenburg relies on her own speculative analysis of how AEFA should have rated its employees and irrelevant evidence attesting to her qualifications as an analyst. For example, Wittenburg

points to evidence that she performed well in 2003 and that Starmine, an independent financial industry service, rated her well. However, it is undisputed that AEFA used 2002 performance reviews for the 2003 RIF. There is no evidence that AEFA relied on Starmine to make 2003 RIF decisions. In addition, there is no evidence that AEFA chose to use the 2002 data to predetermine a biased outcome. *Cf. Evers v. Alliant Techsystems, Inc.*, 241 F.3d 948, 959 (8th Cir. 2001) (explaining that there is nothing inherently discriminatory about choosing to rely on recent performance more heavily than past performance). Therefore, Wittenburg's 2003 performance reviews and Starmine ratings are not relevant.[3] Wittenburg also asserts that Mahowald used subjective components in reviewing analysts' performance and inappropriately raised and lowered scores to the detriment of older workers. However, there is no evidence that Mahowald manipulated scores to achieve a biased outcome. Moreover, "the presence of subjectivity in employee evaluations is itself not a grounds for challenging those evaluations as discriminatory." *Hutson v. McDonnell Douglas Corp.*, 63 F.3d 771, 780 (8th Cir. 1995).

Wittenburg also relies on several comments made by AEFA employees. The Court assumes that these statements were made for purposes of this motion. *See* Fed. R. Civ. P. 56. The Court first turns to comments made before Wittenburg's termination in 2003. The first statement occurred sometime in 1999. Kay Doremus, a female analyst at AEFA, was placed on probation and sought advice from her colleague, Thomas Mahowald. During a conversation, Mahowald allegedly agreed with the proposition that AEFA tended to terminate one person per year and stated: "[Y]ou have to make concessions because a lot of these guys are the sole

---

[3]   The Court will not examine the propriety of AEFA's decision to use 2002 performance reviews in the 2003 RIF. *See Hutson v. McDonnell Douglas Corp.*, 63 F.3d 771, 780-81 (8th Cir. 1995) (noting that discrimination laws do not give courts authority to act as super-personnel departments); *see also Regel v. K-Mart Corp.*, 190 F.3d 876, 880 (8th Cir. 1999) (explaining that a company's exercise of its business judgment is not a proper subject for judicial oversight).

8

support for their families." This comment was made nearly four years before the 2003 RIF. Therefore, it lacks any temporal connection to Wittenburg's termination. More importantly, there is no evidence that this comment was in any way related to Wittenburg. Finally, there is no evidence that Mahowald, at the time, had any decision-making authority over Wittenburg or was making any decisions with respect to the hiring or firing of analysts. Indeed, Wittenburg asserts that Mahowald was hired to run the Equity Research Department in late 2001, and she has proffered no evidence that, in 1999, he was doing anything other than expressing his opinion as an analyst. The Eighth Circuit has ruled that at the pretext stage, "some causal relationship is necessary to demonstrate the significance of non-contemporaneous statements, or statements made by persons other than the relevant decision maker, to the resolution of the ultimate issue of intentional discrimination." *Hutson*, 63 F.3d at 779. Because Wittenburg has failed to proffer any facts demonstrating a causal relationship, the Court concludes that this comment cannot, as a matter of law, support a reasonable inference that Wittenburg was terminated because of her age or gender. *See id.*

The second comment occurred after the 2002 RIF, when Mahowald, then the head of the Equity Research Department, hired a 39-year old male, Brumley, as an analyst. Wittenburg contends that Mahowald told her that he was going to hire Brumley because he had been unemployed and that Mahowald "also talked about Blair's family." Wittenburg contends that this comment demonstrates that Brumley received favorable treatment because he was a man. Mahowald's comment, however, fails to demonstrate pretext or raise an inference of discrimination. Although this comment was made while Mahowald was the head of the Equity Research Department, this comment lacks any causal connection to Wittenburg's termination. In addition, to infer discriminatory motive from this statement requires the resort to speculation.

9

*See Frieze*, 950 F.2d at 541 (noting that an inference is reasonable only if it can be drawn from the evidence without speculation). Even though Wittenburg argues that Mahowald, in speaking about Brumley's family, was expressing a preference for "male breadwinners," Wittenburg has not submitted evidence indicating exactly what Mahowald said about Brumley's family or that he expressed a preference for hiring men.

The third comment appeared in a 2002 news article about AEFA's hiring of several portfolio managers from Fidelity Investments. Truscott is quoted as saying: "We need to be as competitive as the best fund families out there .... We will hire talent where we feel we have gaps. That said, we are not adverse to hiring younger portfolio managers or analysts and growing them." This comment also fails to demonstrate pretext or to create a reasonable inference of discrimination. The comment was made after AEFA hired three portfolio managers from another firm and explains that AEFA is willing to hire younger managers and analysts. No reasonable fact finder could conclude that this comment expresses a preference for young male analysts. Moreover, there is no indication that this comment was connected to Wittenburg's termination.

The fourth comment on which Wittenburg relies involves a hand-written note made in 2002 by Judith Forker, AEFA's Vice President Human Resources Relationship Leader. Forker wrote on a 2002 organization chart "maybe add a jr. person" next to the Finance Sector Team. Forker's handwritten comment is also insufficient to demonstrate pretext or to create an inference of discrimination. Again, there is no indication that this comment demonstrates a preference on the part of AEFA for younger, male analysts. Wittenburg has not proffered any evidence to explain what Forker meant by her notation. Moreover, there is no evidence that this notation, which was written next to the Finance Sector Team, was in any way related to the

elimination of Wittenburg's position, which was in the Technology Sector.

The fifth comment was made by Dan Rivera in 2002. Wittenburg asserts that Rivera was the Head of Equities at that time. Rivera allegedly told Al Henderson, a 62-year old former portfolio manager, that he was terminated in the 2002 RIF as part of a decision to "retain those that were younger" because they had "more years of service ahead of them." While the record shows that Rivera was part of the redesign process of the EID in 2002, Wittenburg has not proffered evidence that he was a decision-maker with respect to the 2003 RIF. Moreover, Wittenburg has not presented evidence that Rivera made any decision that negatively impacted her.[4] Accordingly, Rivera's comments do not demonstrate pretext or support an inference of discrimination. *See Hitt v. Harsco Corp.*, 356 F.3d 920, 925 (8th Cir. 2004) (noting that remarks about age may establish pretext under some circumstances, but not when the remark was made by a non-decision-maker); *Frieze*, 950 F.2d at 541 (finding that ageist comments by persons who did not take part in decision to discharge plaintiff did not create a reasonable inference of discrimination). Even if Rivera's remarks are viewed as evidence of *his* motive to discharge Henderson, the remarks do not support an inference that AEFA's ultimate decision, which was not made by Rivera, to terminate Wittenburg was motivated by age. *See Hitt*, 356 F.3d at 925.

Wittenburg also relies on two comments made close to the time of her termination. First, Wittenburg argues that shortly after her termination Thomas Mahowald stated to her: "Your

---

[4]   The record reveals that Rivera, among others, was involved in the determination of how many analysts to retain in the 2002 RIF, but that he was not involved in a similar determination with respect to the 2003 RIF. In particular, Rivera was involved in the development of the 2002 talent assessment chart. Wittenburg has not, however, proffered evidence that this chart was used in the 2003 RIF. Nor did she proffer evidence that Rivera made any decisions that impacted her 2002 performance ratings, which were the basis for her termination. Indeed, Wittenburg asserts that Mahowald and Truscott were the actual decision-makers who allegedly manipulated and had the final say on her 2002 ratings.

11

husband has a job doesn't he?" This statement, however, is too vague to establish pretext or to create a reasonable inference of discrimination. The Court acknowledges that Wittenburg is entitled to the benefit of all reasonable inferences, but an inference is only reasonable if it can be drawn from the evidence without speculation. *See Frieze*, 950 F.2d at 541. No reasonable fact finder could conclude that this vague question demonstrates that Mahowald terminated her based on her gender or age.

Second, Wittenburg relies on comments made by Mike Kennedy, a portfolio manager, during a job interview after Wittenburg's termination. During the conversation, Wittenburg claims that Kennedy advised her that she should start looking for another job if he hired her, due to "the secrecy that had come to permeate AEFA under Truscott, and due to management's lack of respect for people." Kennedy also allegedly stated that two employees "did not want to retire now." Wittenburg believed that he meant older employees were unfavorably targeted. The Court concludes that Kennedy's comments cannot be interpreted as demonstrating discriminatory animus on the part of AEFA. Wittenburg's interpretation requires too great of an inferential leap. Kennedy's comments, on their face, appear to express a concern with a general lack of respect and secrecy, but nothing in his comments indicates bias against Wittenburg on the part of AEFA.[5]

Having addressed the comments made by AEFA employees, the Court turns to Wittenburg's remaining arguments on pretext. First, Wittenburg argues that AEFA failed to

---

[5] Wittenburg also asserts that discriminatory motive can be inferred because Kennedy ultimately hired a 39-year old male analyst. This inference is unreasonable. There is no evidence that Wittenburg was more qualified than the man hired and admits that during the interview she stated that she "wasn't necessarily comfortable with working with other people in the organization." Moreover, the position was initially offered to a woman, who did not accept.

12

follow policy because Mahowald did not provide Wittenburg with a copy of her 2002 performance review and simply told her of the scores she would receive. There has been no showing that Mahowald's failure to give Wittenburg a written review would have had a material effect on her rating, which led to her termination. Moreover, there is no evidence in the record that Mahowald gave any other employee a written copy of a 2002 performance review.

Second, she argues that the committee at AEFA charged with ensuring that the rating process was non-discriminatory failed to do so by generally endorsing Mahowald's performance rating recommendations and engaging in discrimination itself. However, other than submitting evidence that the committee agreed with Mahowald's 2002 rating, Wittenburg has produced no evidence indicating discriminatory motive or bias.

Third, Wittenburg argues that AEFA's selection process was manipulated for a biased outcome. In support, Wittenburg argues that while AEFA claims that it used "current performance ratings" of individuals to determine whom to terminate during the 2003 RIF, it ignored performance data of 2003. Again, that AEFA used 2002 ratings to determine whom to terminate does not demonstrate bias. Indeed, the record indicates that only 2002 ratings were available at the time of the 2003 RIF and that all employees were evaluated based on these ratings. While it is clear that Wittenburg feels she would have fared better had AEFA used different criteria in the RIF, there is no evidence that AEFA chose to use 2002 data to predetermine a biased outcome. *Cf. Evers*, 241 F.3d at 959.

Fourth, Wittenburg argues that AEFA categorized its analysts differently in the 2002 and 2003 RIFs, thereby allowing AEFA to terminate older and female analysts. Specifically, Wittenburg asserts that in its review for termination, AEFA categorized its analysts by "pool" in 2002 and "sector" in 2003 so it could bias the outcome of the RIF. AEFA argues that it had a

business reason to analyze its analysts by sector for the 2003 RIF, namely because it had changed its research structure between 2002 and 2003. After a thorough review of the record, the Court is unable to find evidence supporting Wittenburg's claim. Instead, it appears that while Wittenburg is critical of the RIF process in general, AEFA's decision to categorize analysts by "sector" in 2003 does not demonstrate pretext or create a reasonable inference of discrimination.

Viewing the record in the light most favorable to Wittenburg, no reasonable fact finder could conclude that AEFA's proffered reasons for terminating Wittenburg are pretextual. In addition, the record does not permit a reasonable inference that age or gender actually motivated AEFA's decision to terminate Wittenburg. The Court therefore grants AEFA's motion for summary judgment insofar as it relates to Wittenburg's age and gender discrimination claims.

**B.     Retaliation**

Wittenburg also argues that AEFA retaliated against her for filing a discrimination complaint by reducing the amount of her 2003 bonus. To establish a prima facie case of retaliation, Wittenburg must show: (1) a charge of discrimination was filed; (2) AEFA took adverse action; and (3) the adverse action was linked to the filing of the discrimination charge. *See Evans v. T.W. Servs., Inc. of Del.*, 930 F.2d 612, 614 (8th Cir. 1991). If Wittenburg establishes her prima facie case, then AEFA must articulate a legitimate nondiscriminatory reason for its action. Wittenburg must then show that AEFA's proffered reason is pretextual and that her filing a discrimination charge was the real reason for AEFA's action. *See Jackson v. Delta Special Sch. Dist., No. 2*, 86 F.3d 1489, 1494 (8th Cir. 1996).

Wittenburg argues that AEFA retaliated against her because it gave her a bonus that was less than the bonuses she received in previous years and less than the amount she claims she

should have received. Wittenburg argues further that retaliatory intent, and therefore a causal connection, is demonstrated by the facts that AEFA did not initially agree to pay her a 2003 bonus, that AEFA labeled her bonus check "litigation settlement," and that AEFA allegedly gave her an undeserved low score on her 2003 review after it had learned of her legal claims. The Court assumes without deciding that Wittenburg can establish a prima facie case of retaliation.

AEFA has articulated a legitimate nondiscriminatory reason for the alleged adverse action. First, AEFA asserts that Wittenburg's bonus was determined in the same manner as all other analysts and in accordance with its compensation plan. AEFA also contends that poor fund performance in 2002 and a change in the method of calculating bonuses in 2003 resulted in a smaller bonus pool in Minneapolis. AEFA asserts that many Minneapolis analysts received lower bonuses in 2003 as a result of the smaller bonus pool. Although Wittenburg questions the calculations used to determine, and the amount of, her bonus, she has not offered evidence demonstrating that AEFA's reasons are pretextual and that her bonus was lowered because she filed a discrimination charge. The Court therefore grants AEFA's motion for summary judgment insofar as it relates to Wittenburg's retaliation claims.

### III.   CONCLUSION

For the reasons stated above, the Court grants AEFA's motion for summary judgment. The Court will issue an Order consistent with this Memorandum separately.

Dated: September 19, 2005

_____
JOAN N. ERICKSEN
United States District Judge